**INGLE LAW FIRM**
111 West Monroe Street, Suite 716
Phoenix, Arizona 85003
Telephone: (602) 615-8395
Fax: (602) 926-2753
Christopher B. Ingle (Ariz. Bar #025553)
Michelle Mozdzen (Ariz. Bar #028188)
cingle@inglelawfirm.net
mmozdzen@inglelawfirm.net
courtdocs@inglelawfirm.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona Limited Liability Company; and, ED MAGEDSON, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> BEN SMITH, in his individual capacity and as Sac County Attorney, <br><br> Defendant. | No. 2:17-mc-00020-DJH <br><br> **NON-PARTY JOHN BREWINGTON'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA TO TESTIFY AT A DESPOSITION** <br><br> *(Assigned to the Hon. Diane J. Humetawa)* |

Non-party Deponent John Brewington ("Brewington"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 45(d)(3), hereby replies in support of his Motion to Quash. This Court must quash the subpoena because the Iowa case in which the subpoena was issued has either settled or been dismissed. Either way, the litigation that gave rise to this Motion has been resolved. There is no longer any need for the deposition sought by Plaintiffs.

The subpoena is also improper because it requires Brewington to appear in a location farther than 100 miles from where he is located and regularly transacts business in person. Fed. R. Civ. P. 45(d)(3)(A)(ii). Additionally, the subpoena creates an undue burden on Brewington as Plaintiffs Xcentric Ventures, LLC ("Xcentric") and Ed Magedson ("Magedson," and collectively "Plaintiffs") have been dragging Brewington into their vexatious litigation activities since 2007. Plaintiffs' sole purpose in issuing this subpoena and trying to take Brewington's deposition is a thinly-veiled attempt to further harass and threaten Brewington. This behavior needs to stop.

This Reply is supported by the following Memorandum of Points and Authorities, and this Court's entire case file.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     BACKGROUND.

Plaintiffs' Opposition contains a number of falsehoods and mistruths, too numerous to address in the page restrictions on a reply brief, however, Brewington will try to address the most egregious and most relevant points of contention.  If the Court desires further briefing on any particular issue Brewington will be happy to address it.

#### A.     Brewington is not a material witness in this case.

Plaintiffs incorrectly suggest that Iowa District Court Judge Strand has opined about the value of Brewington's testimony in the Iowa case. The quote from Judge Strand should be disregarded, as the quote Plaintiffs cite does not refer to Brewington by name, and does not stand for what Plaintiffs claim it stands for.  Judge Strand is NOT describing Brewington's alleged "involvement" in the Smith case at all. The only place Brewington's name appears in the 52-page exhibit is 32 pages later when Judge Strand

quotes *Plaintiffs' motion* using Brewington's name, and refuses to involve him in the preliminary injunction that Plaintiffs ask for.

Plaintiffs also provide inaccurate information to this Court in their next point, regarding Brewington's alleged statements about the Iowa case. Plaintiffs' first point is that Brewington claims to have "'a lot to say' in the Iowa case."[1] Even if Brewington's statement referred specifically to the Iowa case, it does not show that what Brewington has to say is relevant at all. Nearly anyone who knows the facts of the Iowa case will have an articulable opinion on the matter. Brewington is no exception. The fact that Plaintiffs have been harassing and intimidating Brewington for ten (10) years all but ensures that Brewington would have "a lot to say" about what Plaintiffs have been doing to him. But the fact that someone has "a lot to say" about Plaintiffs does not mean that the statements are relevant or admissible in Plaintiffs' latest lawsuit against Defendant Ben Smith.

Plaintiffs further mischaracterize, or misunderstand, Brewington's words when he describes himself as an expert witness. At no time has Brewington ever "admitted" that he is a material witness in the Iowa case. This is pure fiction. Brewington has extensive knowledge about Plaintiffs' business dealings and associates because they have repeatedly dragged him into their vindictive litigation schemes over the past ten (10) years, as they are once more attempting to do. As explained above, Brewington may have extensive experience dealing with Plaintiffs and their ongoing harassment, so much that he can be considered an expert on the subject of Plaintiffs and their sordid methods, but that does not mean he has any information necessary to the Iowa case.

---

[1] Upon review of Plaintiffs' Exhibit C, Brewington actually just said he "has a lot to say." He did not state that he had anything to say about the Iowa case in particular.

### B. Brewington did not evade service.

Contrary to Plaintiffs' representations in their Opposition, Brewington did not evade service. He simply did not happen to be in Arizona at the time and requested that Plaintiffs go through the proper channels and follow the rules to affect service on him in a manner permissible by law. Brewington even went so far as to offer to meet Plaintiffs' process server for personal service at several businesses near his residence in Mexico. Plaintiffs declined that offer, and now blame Brewington for their failure to act in a timely manner.

## II. LEGAL ANALYSIS.

### A. Plaintiffs had ample notice of the Motion to Quash.

Brewington explains the reasons for the delay in filing the Motion to Quash. Plaintiffs claim that counsel undersigned waited until the day of Brewington's deposition to file this motion. That is incorrect. The motion was filed on March 30, 2017. Plaintiffs received a copy of the motion five minutes later from undersigned counsel. Plaintiffs were not waiting around for the document to post to the Court's docket. Further, Plaintiffs' case law regarding motions to quash after the return date (*Bell Inc. v. GE Lighting, LLC*, 2014 WL 1630754, at *9 (W.D. Va., Apr. 23, 2014)) is not applicable in the present case, as the Motion to Quash was filed *before* the return date on the subpoena, and the cases cited by Plaintiffs do not create controlling precedent.

Plaintiffs had plenty of notice, as evidenced by the communications between Plaintiffs' counsel Maria Speth ("Speth") and Brewington's counsel Christopher Ingle ("Ingle") dating back as far as March 2, as cited in Ingle's affidavit, attached to the Motion to Quash as Exhibit L. Speth's implication that any costs were incurred as a result of having to reserve and then subsequently cancel a court reporter (pg. 7, ln. 6 of

Opposition to Motion to Quash) are misleading and false. In fact, when undersigned counsel and Ingle engaged in a meet and confer conference with Speth, she opened the conversation by stating that the court reporter had been cancelled with sufficient notice to avoid any costs.

### B. Brewington is currently in Mexico.

Brewington is a legal resident of Arizona, but he is often in Mexico and Central America for work. He is not vacationing there. He owns a residence in Mexico and stays there when he is in the country, as has been his practice since 2013. This is why Brewington offered to meet Plaintiffs' process server at one of several establishments in Mexico near his residence to voluntarily accept service. The emails from Brewington that Plaintiffs attach to their Opposition are not dispositive of the fact that Brewington is in Mexico, and in fact, support precisely what Brewington has said all along. To avoid any misunderstanding caused by taking small excerpts of Brewington's words and using them out of context, as these particular Plaintiffs have done, the paragraph from Exhibit D should be quoted in its entirety. Plaintiffs' Exhibit D, an email sent over a year ago by Brewington on March 31, 2016, informs Plaintiffs:

> Let me begin by saying I am not currently in the US and have no immediate plans to return. I have made plans to retire for some time and this is me practicing. There is no relation to me being here and any current criminal and/or civil action and to think so is part of a mélange of borderline personality disorders not to exclude narcissism.

Plaintiffs are correct in that Rule 45(c)(1)(A) and 45(c)(1)(B) use the subpoenaed person's residence as the basis for calculating where the subpoena may command attendance at a deposition. Rule 45(c)(1)(B) need not be addressed, as it is not applicable

5

because Brewington is not a party, and is not being commanded to attend a trial.[2] As of the date of this filing, Brewington is in Mexico, and is over 200 miles from the location at which he has been summoned to appear and give testimony. This is impermissible under Rules 45(c)(1)(A).  The fact that alternative service was granted to permit Brewington to be served by emailing his attorney, who is in Arizona, is immaterial to determining Brewington's residence.

Plaintiffs cite to *Crowther v. I.N.S.*, 64 F.3d 666 at *1 (9th Cir. 1995), to support the proposition that one's residence is defined as a person's "principle, actual dwelling place in fact, without regard to intent." Right now, and for the past few years, Brewington's principle, actual dwelling place is in Mexico.  He is not "vacationing," "fleeing," "hiding out," or "absconding" to Mexico, as Plaintiffs claim.  Brewington even attached a news article documenting his work in Mexico as an exhibit to his Motion.

The New York case Plaintiffs rely on for support, *Am. Int'l Tel., Inc. v. Mony Travel Servs., Inc.*, is not controlling or applicable to the present case and is obviously distinguishable. 203 F.R.D. 153 (S.D.N.Y. 2001).  In *Mony* the deponent left the country immediately after being served with the subpoena.  The Court noted that his absence seemed suspicious given the circumstances of his sudden travel. Here, unlike the *Mony* case, Brewington has maintained a residence in Mexico since 2013, long before he was served, or before this case even started. Also unlike the *Mony* case, Brewington was in Mexico when his attorney, Chris Ingle, accepted service on his behalf.  Brewington owns a residence in Mexico only; he does not own a residence in the United States.

---

[2]   Plaintiffs assert that "the word "trial" is the "functional equivalent of a pre-trial deposition." This is not accurate because Rule 45(c)(1) differentiates between appearances at trial and appearances at pre-trial depositions. If the rule and interpreting case law meant "pre-trial depositions" they would say "pre-trial depositions," not "trial."

Plaintiffs also cite to *Sabol v. Brooks*, another case that is neither controlling nor applicable in this situation, as that case dealt with the production of documents in a subpoena *duces tecum*, not a subpoena for deposition testimony. 469 F. Supp. 2d 324, 328 (D. Md. 2006). Nevertheless, *Sabol* held that the "100 mile limit protects an out of state non-party from the undue burden and expense of traveling over 100 miles to a proceeding to which it is not a party." *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006). Compliance with the subpoena would require Brewington to travel over 200 miles, which is impermissible under Fed. R. Civ. P. 45(c)(1)(A). There is no reason Plaintiffs could not travel to Brewington.

### C. Plaintiffs are harassing Brewington.

Brewington is not a "self-professed material witness" in this case, and Plaintiffs have made no such showing that he has testimony of any value to the Iowa case. To understand how immaterial Brewington's testimony is to this case, one need only to look at the lack of urgency with which they pursued his deposition testimony since the inception of this case. The Iowa case was initiated in 2015. Plaintiffs then obtained a subpoena to depose Brewington in March 2016. Plaintiffs claim they tried to serve Brewington, but it took them almost a full year to file a Motion for Alternative Service, which they finally did in mid-February 2016. This case was set for trial in May. It boggles the mind that if Brewington were such a material witness, 1) how the case could have progressed in any substantive manner so far without him, and 2) why Plaintiffs would be so careless as to wait until the eleventh hour to depose an alleged "material" witness. The answer is obvious: Brewington is not a material witness, and Plaintiffs are not actually seeking any information about the Iowa case at all. Instead, they are harassing him, in the same manner that they have kept up for the past decade.

Compliance with the subpoena would impose an undue hardship on Brewington. Private investigations are a time-sensitive business; a person must be in the right place at the right time to accomplish the goals of the investigation. Taking several days off to come answer more questions from these same Plaintiffs would be a great hardship. Further, Brewington has no plans to return to Arizona in the foreseeable future. This is not a "travel problem," despite Plaintiffs' desire to characterize it as such. Creating improper citations[3] to support their claim does not change the fact that Plaintiffs are improperly trying to evade the limitations imposed by Fed. R. Civ. P. 45(c)(1)(A).

### D.    If Brewington is deposed, a protective order is necessary.

Plaintiffs oppose Brewington's request for a protective order if this Court orders Brewington to appear at another deposition for further harassment by Plaintiffs. Plaintiffs' position is curious, since during the meet and confer telephone conference, Speth actually proposed such a limitation on the content of Brewington's deposition. Regardless of Plaintiffs' change of position, if Brewington is to be deposed, a protective order is the only way to limit Plaintiffs' ability to harass Brewington. Such a protective order is well within this Court's power under Fed. R. Civ. P. 45(d)(3)(B)-(C). It will also prevent the inevitable calls to the Court during the deposition when Plaintiffs inquire into Brewington's personal life, family, financial affairs, and the status of his work and

---

[3]    Plaintiffs' "citation" to the New York District Court's words in *Am. Int'l Tel., Inc. v. Mony Travel Servs., Inc.* crosses a line with "paraphrasing" the court. Plaintiffs write that "[Brewington's] travel problem is of his own making," claiming to cite 203 F.R.D. at 154-55. The *Mony* case did not involve Brewington at all. It has nothing to do with him. Brewington has never heard of the case or any of the parties. It is improper for Plaintiffs to modify quotes or citations from cases to make it appear that the court is referring to Brewington when Plaintiffs know perfectly well that the court was referring to a different person entirely.

investigations. However, the Court need not reach this issue because Plaintiffs have not shown a substantial need for Brewington's testimony, as required under Fed. R. Civ. P. 45(d)(3)(C). Having failed to meet their burden, this Court is required to quash the subpoena under Fed. R. Civ. P. 45(d)(3)(A). The pattern of abuse and harassment has gone on for over ten (10) years, and Plaintiffs and their counsel have shown time and again that they cannot be trusted to conduct themselves in a manner consistent with the law.

### E. Plaintiffs' request for sanctions must be stricken.

Sanctions are governed by Fed. R. Civ. P. 11. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11. A request for sanctions cannot simply be thrown into a response brief as an aside. Plaintiffs have not followed the proper procedures for requesting sanctions and therefore their request must be denied.

"The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason,* 22 F.3d 1455, 1463 (9th Cir.1994). Rule 11 permits sanctions "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of L.A.,* 120 F.3d 982, 985 (9th Cir.1997). A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990). Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

These Plaintiffs know full well that this is not an appropriate case for sanctions. In *Xcentric Ventures, L.L.C. v. Borodkin*, this same Court found that Plaintiff Xcentric's

claims were utterly without merit. The Ninth Circuit agreed. 934 F. Supp. 2d 1125, 1141 (D. Ariz. 2013), *aff'd sub nom. Xcentric Ventures, LLC v. Borodkin*, 798 F.3d 1201 (9th Cir. 2015). In *Borodkin*, this Court found that Xcentric "failed to allege sufficient facts 'to state a claim to relief that is plausible on its face,'" and yet still declined to impose sanctions on Xcentric. *Id*. The court explained that "[i]t is one thing for a complaint to be without merit; it is another for it to be frivolous," and that "[t]he issues involved in determining whether an attorney has violated Rule 11 ... involve fact-intensive close calls..." *Id*. (internal citations omitted).

The Motion to Quash is legally meritorious. Fed. R. Civ. P. 45(d)(3)(C) and its supporting case law provides the legal grounds on which the subpoena must be quashed. Brewington's Motion to Quash is not frivolous in any way; it is the proper way to seek protection from Plaintiffs' abuse of the discovery process. The Motion is well-supported with factual foundation, as demonstrated by the voluminous exhibits submitted with the Motion to Quash. Ten years of cumulative litigation, seventeen hours of depositions, and relentless false allegations of wrongdoing, by both Plaintiffs and their counsel, have provided Brewington with the factual basis for the Motion. The cited statutes, rules, and case law demonstrate reasonable and competent inquiry into the law. The Motion to Quash was submitted for the sole purpose of protecting Brewington. Plaintiffs have been harassing Brewington for years, and this Court needs to know the full extent of their infractions. Plaintiffs complain about the contents of the Motion to Quash, but the conduct detailed to the Court is their own. There is no basis for sanctions.

**F.      The Iowa case has been resolved and there is no longer any reason for a deposition.**

10

Earlier today undersigned counsel received notice that the Iowa case that gave rise to the subpoena at issue has either been settled, dismissed, or resolved in some other manner. Regardless of the cause, the effect is that there is no longer any reason for Plaintiffs to depose Brewington. Undersigned counsel requested that Plaintiffs withdraw the subpoena. Speth instead insisted that the Court must rule on Brewington's Motion. This is one of the most egregious discovery violations Brewington has ever seen. Plaintiffs know that they have no right to depose Brewington, but they are still forcing him to fully brief this Motion. This Motion practice has cost Brewington over $20,000.00. It is utterly frivolous and without any legal basis or merit whatsoever. It is pure harassment; Plaintiffs are forcing Brewington to spend money to protect himself from discovery – discovery which is now invalid. But Plaintiffs are still forcing Brewington to spend money on attorneys. And Plaintiffs are now wasting this Court's precious time by asking it to rule on an issue that Plaintiffs know is moot. Brewington respectfully requests that the Court allow him to apply for an award of the costs and fees incurred herein.

## III.   CONCLUSION.

For all the foregoing reasons Brewington respectfully requests that this Court quash the subpoena issued to Brewington on February 13, 2017, issue a Protective Order excusing him from deposition, and deny Plaintiffs' request for sanctions.

RESPECTFULLY SUBMITTED this 19th day of April, 2017.

**INGLE LAW FIRM**

By:/s/ *Michelle Mozdzen*
Michelle Mozdzen
Christopher B. Ingle
*Attorneys for non-party*
*John Brewington*

11

# CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2017, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Maria Crimi Speth
> Jaburg & Wilk, P.C.
> 3200 North Central Avenue, Suite 2000
> Phoenix, Arizona 85012
> Email: mcs@jaburgwilk.com
> *Attorneys for Plaintiffs*

I emailed a copy of the attached documents plus any exhibits to the following:

Kristopher Madsen
Stuart Tinley Law Firm, L.L.P.
310 W. Kanesville Blvd. Second Floor
Council Bluffs, Iowa 51501
Email: Kristopher.Madsen@stuarttinley.com
*Attorneys for Defendant*

Joel Robbins
Robbins & Curtin PLLC
301 East Bethany Home Road
Suite B-100
Phoenix, Arizona 85012
Email: joel@robbinsandcurtin.com
*Attorney to be noticed*

Angela Campbell
Dickey & Campbell Law Firm, P.L.C.
301 East Walnut Street, Suite 1
Des Moines, Iowa 50309
Email: Angela@dickeycampbell.com
*Attorney to be noticed*

Dated: April 19, 2017

By: /s/ *Michelle Mozdzen*