**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000
Maria Crimi Speth (012574)
mcs@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

**Robbins & Curtin, PLLC**
301 E. Bethany Home Rd., Ste B-100
Phoenix, Arizona 85012
602.285.0100
Joel B. Robbins (011065)
joel@robbinsandcurtin.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Xcentric Ventures, LLC, an Arizona limited liability company; and Ed Magedson, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> Ben Smith, in his individual capacity as Sac County Attorney, <br><br> Defendant. | Case No. 2:17-cv-01686-DJH <br><br> **MOTION TO SEAL DOCS. 1, 5 & 6** <br><br> **(Oral Argument Requested)** |

Pursuant to Rules 5.2(e) & 26(c), Fed. R. Civ. P., Plaintiffs Ed Magedson and Xcentric Ventures, LLC, hereby file their Motion to Seal Docs. 1, 5 & 6. Non-Party John Brewington ("Brewington") filed a frivolous Motion to Quash Subpoena to Testify at a Deposition and supporting exhibits for the improper purpose of harassment, causing unnecessary delay, and needlessly increasing the cost of the litigation. The Motion had no basis in fact or law. Although Brewington has withdrawn the offending filings after being served with a proposed Rule 11 motion, he has placed inappropriate content on the record. Plaintiffs' interests in sealing the documents outweighs the public's interest in access. Therefore, Plaintiffs respectfully request an order sealing Brewington's

improper filings, located at Docs. 1, 5 & 6, and granting any other relief the Court deems proper and just.

This Motion is supported by the following Memorandum of Points and Authorities as well as the entire record in this matter, which is incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  BACKGROUND

### A.  Plaintiffs Are Frequent Targets for Abuse of Process

Plaintiff Xcentric Ventures, LLC is the operator of the consumer-review website RipoffReport.com. Plaintiff Ed Magedson is Xcentric Ventures, LLC's manager. Inevitably, as the operators of the consumer-review website, Plaintiffs often find themselves under the ire of those who are the subject of consumer reviews. But Congress recognized the importance of promoting free speech on the internet by passing the Communications Decency Act (the "CDA"), 47 U.S.C. § 230. And courts have expressed appreciation for the role consumer review sites play in society by providing a conduit for such speech. *See, e.g.*, *Edwards v. District of Columbia*, 755 F.3d 996, 1006–07 (D.C. Cir. 2014) ("Further incentivizing a quality consumer experience are the numerous consumer review websites, . . . which provide consumers a forum to rate the quality of their experiences . . . . That the coal of self-interest often yields a gem-like consumer experience should come as no surprise."). But this positive role in society has not stopped the subjects of reviews from doing everything in their power—lawful or otherwise—to tear down the public forums on which their critics share information.

### B.  The Underlying Section 1983 Iowa Case

This matter arises from a lawsuit filed in the Northern District of Iowa under 42 U.S.C. § 1983. *Xcentric v. Smith*, 5:15-CV-04008-LTS (N.D. Iowa Jan. 30, 2015). Plaintiffs filed the action against an elected Iowa county attorney for abusing his investigative authority in an effort to force removal of critical, third-party reviews from the Ripoff Report website. The county attorney had, *inter alia*, used his investigative

power to obtain Plaintiffs' private and privileged emails and bank account information, which he then released to Brewington, who discussed them on social media. The county attorney acknowledged in disclosures, discovery, and in testimony under oath (both in the preliminary injunction hearing and in deposition) that he had relied on Non-Party John Brewington for assistance in his investigation against Plaintiffs.

### C. Brewington's History with Plaintiffs

Brewington has a long and storied history working against the Plaintiffs. As early as 2007, Brewington and his company were the subjects of various critical third-party reviews on the Ripoff Report website. Brewington has embarked on a vendetta against Plaintiffs that continues to this day.

Brewington is part of a small band of individuals who have dedicated themselves to tearing down the Ripoff Report website. The group has utilized its individual members' expertise—including Brewington's experience as a private investigator and his familiarity with the court systems—to take whatever shots they can at Plaintiffs, however trivial or inconsequential. Since Plaintiffs are shielded from liability for reviews posted by third parties, the group frequently espouses unfounded and false conspiracy theories that claim Plaintiffs authored the critical reviews—an effort to circumvent CDA immunity.

Another member of these Ripoff-Report detractors, Shawn Richeson, has appeared in the underlying Section 1983 Iowa case (despite being a non-party) and filed various notices and motions, including irrelevant and unfounded assertions, intended to both prejudice Plaintiffs and force them to incur additional unnecessary expenses. This is standard protocol for this group, and is precisely what Brewington has done here. The judge in the Northern District of Iowa struck Richeson's filings and ordered that he seek leave of Court before filing anything further. *See* Order (doc. 66), *Xcentric v. Smith*, 5:15-cv-04008 (N.D. Iowa Nov. 3, 2015) ("The motions are frivolous and improper efforts to interject Richeson's unrelated grievances against plaintiffs and their counsel

1  into this lawsuit. . . . The motions are nothing but the misappropriation of the court's
2  docket as a public forum to air his attacks.").

3      Brewington has devoted a great deal of resources—and his knowledge as a
4  private investigator—to eradicating the Ripoff Report, including uncovering and
5  publicly disseminating private information about Plaintiffs to harass and embarrass
6  them. Brewington has made various public statements menacing or harassing Plaintiff's
7  employees, attorneys, agents, and service providers.

8      Brewington regularly incites others to harm Plaintiffs by litigation and other
9  methods. For example, the Arizona Court of Appeals found there was evidence
10 Brewington assisted an individual—who has since been convicted of extortion and is
11 serving time in federal prison—in a campaign to harass and threaten Xcentric's service
12 providers, extorting them to discontinue providing services to the Ripoff Report
13 website. *See* Memorandum Decision, *Xcentric Ventures, LLC v. Brewington*, 1 CA-CV
14 11-0042 (Ct. App. Dec. 22, 2011), available at

15     http://www.azcourts.gov/Portals/0/OpinionFiles/Div1/2011/1%20CA-CV%2011-
16 0042-145536.pdf (last accessed July 3, 2017). The case ultimately settled in 2012, but
17 Brewington's zealous antagonism has continued.

18     **D.    The Deposition Subpoena**
19     In the underlying Section 1983 Iowa case, Plaintiffs began attempts to serve a
20 deposition subpoena on Brewington in March 2016 to further explore his role in the
21 Iowa investigation. Plaintiffs expended significant efforts to locate Brewington but he
22 was clearly evading service. He posted mocking comments on social media about how
23 he would not be found. On February 2, 2017, the Northern District of Iowa authorized
24 alternate service based on evidence Brewington was evading service. Plaintiffs effected
25 service on Brewington on February 13, 2017 and set the deposition for March 31, 2017.

26     **E.    The Offending Filings**
27     On March 30, 2017, the evening *before* his scheduled deposition, Brewington
28 filed a Motion to Quash Subpoena to Testify at a Deposition (the "Motion to Quash")

JABURG|WILK
Attorneys at Law

and, thereafter, failed to appear at the scheduled deposition. The Motion to Quash and its supporting exhibits are filled with voluminous irrelevant, false, and scandalous material, contemplated to harass Plaintiffs, cause delay, and increase Plaintiffs' costs in the underlying matter—and it "wasted time and resources of the Court."

Brewington and his cohorts frequently seek to place defamatory matter on the record in an effort to legitimize their unfounded affronts—so they can cite to the false statements elsewhere as part of the record in an official legal proceeding. They also frequently seek to publicize confidential information to harass Plaintiffs. This is precisely what Brewington and his counsel have done here. His 22-page Motion inexplicably exceeds the 17-page limit for motions filed in this Court, under LRCiv 7.2. Under separate cover, Brewington then filed more than a thousand pages of irrelevant exhibits, including the entirety of numerous deposition transcripts, including transcripts from unrelated lawsuits long concluded. (Doc. 5). When Plaintiffs' counsel demanded the entire filing be retracted Brewington's counsel merely filed a Notice of Errata to clarify one of the more egregious and provable misrepresentations (Doc. 6), but did not remedy the overall problem.

Not a week after the Motion to Quash was filed, Shawn Richeson, the same individual who had filed improper motions in the underlying Section 1983 Action, filed another motion in the Section 1983 case, citing to the contents of Brewington's Motion to Quash as support for one of his frivolous claims. *See* Motion for Order Limiting Plaintiffs (doc. 149) p. 6, 5:15-cv-04008-LTS (N.D. Iowa Apr. 20, 2017) ("In Recent Arizona cause no. 2:17-mc-00020-DJH, it was affirmatively stated that . . . ."). Brewington apparently kept Richeson up-to-date so the defamatory pleadings could be exploited by the hostile coalition to further interfere with litigation and damage Plaintiffs' interests and reputation.

### F. Plaintiffs Respond and Request Sanctions; Brewington files the Offending Content in State Court

Plaintiffs responded to Brewington's late filings with a Response to Motion to Quash and Counter Motion to Compel and Motion for Sanctions. (Doc. 7). The request

for sanctions sought recovery of attorney fees for the unnecessary delay and expense, and requested that Brewington's inappropriate filings be stricken. (*Id*.) Shortly thereafter, the underlying Section 1983 Iowa case settled. Plaintiffs filed a Notice of Settlement Affecting a Portion of the Pending Matter, informing this Court the subpoena was now moot but asking that the Court continue to consider the request for sanctions and to strike the inappropriate filings. (Doc. 9). The Notice indicated sanctions remained appropriate under Rule 45(g), Fed. R. Civ. P., 28 U.S.C. § 1927, and the Court's inherent authority. (*See id*. p. 2).

Notably, less than a week after Plaintiffs initially filed their Response to Motion to Quash, indicating the filing was inappropriate and that it should be removed from the record, Brewington filed the same offending Motion to Quash as an exhibit to a filing in superior court. *See* Motion to Modify Protective Order, Exhibit B, *Xcentric v. Brewington*, Case No. CV2008-008275 (Super. Ct., Maricopa Cty. Apr. 12, 2017). Despite their knowledge that Plaintiffs sought to remove the immaterial, impertinent, and scandalous content from the record, Brewington filed the Motion in another court to (1) place it elsewhere in the public record and (2) place it beyond the reach of this Court to remediate his offensive conduct.

In that filing, Brewington attached the Motion to Quash as an exhibit to his Motion to Modify Protective order, wherein he purports to seek leave of the Superior Court to modify a protective order—from the parties' 2008 lawsuit—so he can file the entirety of two *additional* deposition transcripts in support of his Motion to Quash. The Motion to Modify Protective Order sought to change the almost ten-year-old, confidentiality designations for hundreds-of-pages of deposition transcripts so Brewington could file those transcripts with this Court—in addition to the more-than 1,000 pages of exhibits already filed with the Court. Despite the fact that the Motion to Quash was already moot, Brewington refused after a meet-and-confer to withdraw and strike the motions filed in Superior Court.

The Superior Court has already denied Brewington's Motion to Modify, and a Rule 11 Motion is currently pending in that proceeding.

### G. Plaintiffs' Request for Sanctions

Among other arguments in response to Plaintiffs' request for sanctions, Brewington claimed Plaintiffs failed to comply with Rule 11. (*See* Doc. 10, p. 9). But Plaintiffs did not seek sanctions under Rule 11. This was addressed in Plaintiffs Reply in Support of Motion for Sanctions, which stated, in relevant part:

> Brewington argues sanctions are not appropriate because Plaintiffs did not comply with Rule 11, Fed. R. Civ. P. **But Plaintiffs did not seek sanctions under Rule 11**.

(Doc. 11, p. 5, emphasis added).

Plaintiffs sought sanctions under Rule 45(g), Fed. R. Civ. P., because courts have remarked that "[t]he only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45(f) [the predecessor to Rule 45(g)]." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983); *see also Martinez v. City of Avondale*, CV-12-1837-PHX-LOA, 2013 WL 5705291, at *3 (D. Ariz. Oct. 18, 2013) (stating the same).

Rule 45(g) provides that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." As Brewington had failed, without adequate excuse, to comply with the validly issued subpoena, Plaintiffs requested sanctions under this provision. Indeed, Brewington did not attempt to show he had no discoverable information; he clearly did have discoverable information. Instead he utilized the Motion to Quash to throw more than a thousand pages of mud at Plaintiffs. And Brewington failed to timely object to the subpoena within 14 days of service—again, waiting 45 days, until the night before the scheduled deposition, to file the Motion to Quash. *See* Rule 45(d)(2)(B), (d)(3) & (g); *Games2U, Inc. v. Game Truck Licensing, LLC*, MC-13-00053-PHX-GMS, 2013 WL 4046655, at *2 (D. Ariz. Aug. 9, 2013) (treating Rule 45's 14-day objection requirement as the timeliness standard for

filing motions to quash). Plaintiffs also sought sanctions under the Court's inherent power to levy sanctions upon a finding of "bad faith" conduct and, specifically, against Brewington's counsel under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings. (Doc. 11, p. 5).

When the Motion for Sanctions, under Rule 45 was filed, there was a pressing need to obtain evidence to prepare for trial, and there was not time to go through the Rule 11 protocol to obtain it.

### H. Brewington's Inappropriate Motion to Strike

Despite the fact that Plaintiffs were not seeking sanctions under Rule 11, Brewington then filed a Motion to Strike Plaintiffs' Motion for Sanctions on grounds Plaintiffs had not complied with Rule 11. (Doc. 13). Brewington's Motion to Strike contained further inflammatory matter and flung various insults at Plaintiffs' attorneys. (*Id.*) This filing appeared to be yet another effort by Brewington to multiply the proceedings and impose unnecessary costs. Plaintiffs' counsel sincerely believed the most appropriate way to minimize the negative effects of Brewington's unfounded Motion to Strike was to respond briefly, referring back to prior filings that had already dispensed with his Rule 11 arguments. *See* Doc. 14.

### I. The Court's Hearing on Motion to Strike

On May 24, 2017, the Court set oral argument on Brewington's Motion to Strike for seven days later, on May 31, 2017. (Doc. 15). At the time of the Order, Plaintiffs' lead counsel, Maria Crimi Speth, was already traveling to Barcelona, Spain for the annual conference of the International Trademark Association, for which she serves on the Anti-Counterfeiting Committee. Ms. Speth's schedule, which had been planned long before the motions at issue had even been filed, was set to keep her in Spain through the date of the hearing. Not realizing the Court had taken issue with Plaintiffs' brief Response to Motion to Strike, Ms. Speth arranged to have an associate of the firm, Aaron Haar, appear and argue on Plaintiffs' behalf.

At the hearing, the Court rebuked both sides' attorneys —Plaintiffs' counsel, for filing an unhelpful, one-page Response to Motion to Strike, and Brewington's counsel, for filing voluminous irrelevant documents with the Motion to Quash and for unprofessional comments in the Motion to Strike. The Court struck Plaintiffs' sanctions-related filings because they did not comply with Rule 11 and struck Brewington's Motion to Strike *sua sponte* for the unprofessional comments. When Mr. Haar explained Plaintiffs were not requesting sanctions under Rule 11, the Court stated that this argument had been lost and, in any event, was not made clear by the Response to the Motion to Strike. Thus, the Court held that the ruling stands. Ultimately, the Court instructed Plaintiffs to comply with Rule 11 if they desire to refile a motion for sanctions. (Doc. 17).

Plaintiffs' counsel undersigned wishes to express sincere apologies for filing the brief Response to Motion to Strike and for not attending oral argument on the Motion to Strike in person. As indicated, she was already en route to Spain when the hearing was scheduled and would not be back until after the date of the hearing. She believed the Court would appreciate the brief Response to Motion to Strike (doc. 14) because the arguments made in the Motion to Strike (doc. 13) were repetitive and had already been addressed in Plaintiffs' Reply in Support of Motion for Sanctions (doc. 11, p. 5). Additionally, she presumed the Court would prefer to dispose of the merits of the motions on the timeline chosen by the Court rather than continue the hearing based on her schedule. Undersigned counsel regularly practices in this court and would never want the Court to take offense or believe her firm's actions lack sufficient respect for the decorum of the court. Plaintiffs' counsel apologizes and assures the Court that she most certainly did not intend any disrespect.

**J.**     **Plaintiffs Serve Rule 11 Motion; Brewington Withdraws Offending Filings at the End of Safe Harbor Period.**

Plaintiffs attempted to negotiate to persuade Brewington to agree to strike and seal the offending filings in both State and Federal Court without Court intervention. When those efforts were unsuccessful, Plaintiffs prepared and served a Rule 11 Motion

on July 14, 2017. (*See* doc. 23). Thereafter, on the next-to-last day of the Safe Harbor Period under Rule 11(c)(2), Fed. R. Civ. P., Brewington withdrew the offending filings, thereby avoiding Rule 11 sanctions. (Doc. 25). His Notice of Withdrawal claimed he simply wanted to be done with the case and to stop spending money on attorney fees. (*Id.*) He does not explain why he refused to take such action before forcing Plaintiffs to prepare and serve the Rule 11 Motion.

**II.  PLAINTIFFS HAVE A COMPELLING REASON TO SEAL THE RECORDS, AND THEIR INTERESTS OUTWEIGH THE INTERESTS OF THE PUBLIC TO ACCESS THE RECORDS**

Rule 5.2(e), Fed. R. Civ. P., authorizes the Court to, *inter alia*, protect sensitive information by limiting or prohibiting remote electronic access to a document filed with the Court. Rule 5(d)(1), Fed. R. Civ. P., specifies that discovery is presumed confidential and "must not be filed until they are used in the proceeding or the court orders filing." Citing this Rule, the Seventh Circuit has observed that "[u]nfiled discovery is private, not public." *Bond v. Utreras*, 585 F.3d 1061, 1066 (7th Cir. 2009).

Moreover, the Court has broad discretion to issue orders to protect a party from "annoyance, embarrassment, oppression, or undue burden or expenses," including but not limited to "requiring that a deposition be sealed" and "requiring that . . . other confidential research, development, or commercial information not be revealed[.]" Fed. R. Civ. P. 26(c)(1); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) ("The Supreme Court has interpreted this [26(c)(1)] language as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'") (quoting *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984)).

A party seeking to seal a judicial record must overcome the presumption of public access by meeting the "compelling reason" standard. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). The party must "articulate compelling reasons supported by specific factual findings . . . that outweigh the general

10

history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Kamakana*, 447 F.3d 1172, 1178–79 (internal citations omitted). The Court must "conscientiously balance[ ] the competing interests" of the public and the moving party, and "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. (citations omitted).The U.S. Supreme Court has recognized the existence of compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements or release trade secrets." *See Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312 (1978)).

Nothing in this collateral matter would assist the public in understanding or otherwise verifying the judicial process. The public has little to no interest in access to defamation or scandal unrelated to causes of action. And, in fact, the public has an interest in being assured that antagonists cannot misappropriate the Court's docket as a public forum to air personal attacks with impunity. Brewington's filings in this Court were filed solely for improper purposes, including to "gratify private spite," "promote public scandal," "circulate libelous statements," impose unnecessary delay, and increase Plaintiffs' costs. (Docs. 1, 5 & 6). He has effectively "weaponized" the Court's docket through his improper filings. An order sealing these documents would deactivate this improper purpose—though the increased costs are sunk unless the Court finds it appropriate to impose sanctions under its inherent power. Brewington had no good reason for filing the subject documents. He waived his objections to the deposition by failing to timely file them. Plaintiffs' interest in sealing these documents greatly outweigh the public's right to access them. The statements made in his filings and the supporting documents were unrelated to the underlying action and to Plaintiffs' right to conduct discovery therein. And, in any event, the voluminous filings do not support his

allegations. Brewington has achieved his goal of placing the inappropriate content on the record. Justice would be best served by sealing the offending filings.

Brewington's Motion to Quash also attached more than a thousand pages of exhibits, including the entirety of numerous deposition transcripts. Portions of those transcripts include confidential information. Portions include additional wild claims by Brewington that have no basis in reality. And several of the transcripts have absolutely nothing to do with Brewington and are not even remotely relevant to the current proceedings. For instance, Brewington attached the entire deposition transcript of Shawn Richeson, the individual who the Northern District of Iowa (in the underlying Section 1983 case) previously criticized for his "frivolous and improper efforts to interject [his] unrelated grievances against plaintiffs and their counsel into this lawsuit," which the court derided as "nothing but the misappropriation of the court's docket as a public forum to air his attacks." Mr. Richeson, again, was the party who immediately cited Brewington's Motion to Quash as authority in inappropriate filings in the underlying Section 1983 case.

The sheer volume of exhibits, alone, constitutes flagrant harassment. It is wholly unreasonable to expect Plaintiffs' counsel (and, indeed, the Court) to cull through the reams of purported "evidence." Brewington does not cite to any particular location in the transcripts. Instead, he claims the full documents are attached so the Court can "open it to literally any page" and, basically, see how horrible Plaintiffs are. Brewington takes this tack in an effort to overwhelm substance with quantity. His efforts force Plaintiffs to choose between foregoing a full review of all the purported evidence and spending an enormous amount of time reviewing irrelevant documents to effectively address the obscure allegations and implicitly disparaging evidence. Most audacious is how blatantly the voluminous filings do not aid his Motion to Quash. The filings were clearly intended to take pot shots at Plaintiffs, place various false allegations and unfounded conspiracy theories in the public record, cause delay to both interfere with

Plaintiffs' right to conduct discovery and interfere with the impending trial date, and to impose considerable attorney fees.

Brewington's Motion to Quash asserted numerous irrelevant, false, and scandalous allegations against Plaintiffs and their counsel. Practically every statement of fact in Brewington's Motion is deceptive to some degree. While Plaintiffs do not wish to introduce another filing identifying all the defamatory allegations in Brewington's Motion to Quash (Plaintiffs' Response to the Motion catalogs the more egregious statements), there are a number of easily demonstrated false comments that reveal the deceptive nature of Brewington's Motion.

For example, Brewington alleges that "Richeson was able to obtain a judgment against [Plaintiffs' in-house counsel, Adam] Kunz for creating defamatory content intended to harass and intimidate him." (Doc. 1, p. 8, citing *Richeson v. Kunz*, No. 288,067 C, Tex. Dist. Ct., Bell Cty.). While Richeson did, in fact, initially obtain a *default* judgment against Mr. Kunz in Texas, the lawsuit was, ultimately, dismissed with prejudice after Mr. Kunz appeared—moving to set aside default and seeking sanctions—and Richeson filed a Notice of Nonsuit, withdrawing the case. A copy of the Texas order is attached as **Exhibit 1**. Richeson did not refile in Arizona. Richeson's lawsuit against Mr. Kunz was a follow-on lawsuit to a previous frivolous suit, with essentially the same allegations, that Richeson filed the year before against multiple parties, including Kunz, and which was similarly dismissed in the face of sanctions motions. Richeson also previously led a campaign on social media he dubbed "Operation Bleed Green," which was designed to harass and threaten those affiliated with Ripoff Report in an effort to cut off all funding and support to the consumer review site. Notably, despite Brewington's false allegation that Mr. Kunz created defamatory content on Ripoff Report, Richeson truly has spent time in prison for the type of fraudulent activity that is complained of in reviews on Ripoff Report. *See, e.g.*, *Richeson v. State*, 03-00-00404-CR, 2001 WL 987138, at *1 (Tex. App. Aug. 30, 2001). But, in any event, this unrelated Richeson matter has nothing to do with whether

JABURG|WILK
Attorneys at Law

1  Plaintiffs were entitled to depose Brewington, who was listed by the defendant county

2  attorney as a material witness throughout the entire Section 1983 civil rights lawsuit

3  proceedings.

4      Brewington also asserts that Plaintiffs' counsel deposed a party, in another

5  unrelated case, and asked questions such as "what are the names of your children,"

6  "how old are they," and "where do they go to school?" (Doc. 1, p. 13, citing Exhibit J).

7  He cites to the entire deposition transcript, attached as Exhibit J. The deposition

8  transcript does not support this statement. Yet, Brewington goes on to claim the purpose

9  of that unrelated lawsuit "was not legitimate; it was to harass their enemies and send a

10  message that they know where to find his kids. The same thing is happening here." (*Id.*)

11  After Plaintiffs' counsel demanded the entire Motion to Quash be retracted and gave

12  examples of the various misrepresentations, Brewington opted to correct only this

13  particular claim in a Notice of Errata—wherein Brewington's counsel explained "[a]t

14  time (sic) that text was written undersigned counsel was relying on his memory of a

15  deposition that occurred four years ago, and did not have the transcript before him."

16  (Doc. 6, p. 2). Yet Brewington filed the deposition as an exhibit to the Motion. And he

17  still made those unfounded and scathing accusations against opposing counsel, which

18  remain part of the record.

19      Brewington's various allegations and conspiracy theories are irrelevant to the

20  subpoena; demonstrating that they were asserted for the purpose of harassing Plaintiffs.

21  That the Motion to Quash was immediately cited elsewhere as authority by one of

22  Brewington's cohorts demonstrates Brewington's purpose of placing the scandalous

23  material on the public record under a false sheen of legitimacy. That Brewington,

24  thereafter, filed the Motion to Quash as an exhibit in Superior Court (right after

25  Plaintiffs sought to have the inappropriate material stricken) is definitive evidence of his

26  malicious intent to smear Plaintiffs in the public forum and use the courts as his

27  personal mouthpiece.

28

While Brewington has effectively avoided the imposition of Rule 11 sanctions in this matter, his improper purpose in filing the documents should not be countenanced. Brewington has used this Court's docket to gratify his own spite, to scandalize and defame Plaintiffs (and others associated with them), to impose unnecessary delay, and to increase Plaintiffs' costs. Plaintiffs' interests in sealing the records outweigh the public's interest in access to the inappropriate documents. Although the underlying Section 1983 Iowa case subsequently settled and Brewington has withdrawn his offending filings, an order sealing the filings would be appropriate. Since placing the inappropriate content on the public record was Brewington's objective, an order sealing Brewington's offending filings (docs. 1, 5 & 6) would be just.

## III.    CONCLUSION

Non-Party John Brewington's actions were calculated to scandalize and defame Plaintiffs, maximize Plaintiffs' expenses, to inject delay into the proceedings, and, ultimately, to interfere with Plaintiffs' right to engage in discovery and seek remediation for their injuries. Plaintiffs' interests in removing the inappropriate content from the record outweighs the interests of the public to access the content. Mr. Brewington's actions undermine the authority of the Court and are directly contrary to the judiciary's aim "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Brewington flagrantly mocked a validly issued subpoena and used this Court as a tool to cost Plaintiffs money and broadcast lies about Plaintiffs under the cover of immunity from defamation.

Therefore, Plaintiffs respectfully request an order sealing Brewington's improper filings, located at Docs. 1, 5 & 6, and granting further relief as the Court deems proper and just.

/  /  /

/  /  /

/  /  /

DATED this 8th day of August, 2017.

**Jaburg & Wilk, P.C.**

*/s/ Aaron K. Haar*
Maria Crimi Speth
Aaron K. Haar
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012

**Robbins & Curtin, PLLC**

Joel B. Robbins
301 East Bethany Home Road, Ste B-100
Phoenix, AZ 85012

*Attorneys for Plaintiffs*

### Certificate of Service

I hereby certify that on this 8th day of August, 2017, I served the above document by email and regular mail on counsel for Non-Party John Brewington at the addresses below:

Christopher B. Ingle
Michelle Mozdzen
Ingle Law Firm
111 West Monroe Street
Suite 716
Phoenix, Arizona  85003
cingle@inglelawfirm.net
mmozdzen@inglelawfirm.net
courtdocs@inglelawfirm.net

*/s/ C. Roundtree*

Exhibit 1

# CIVIL JUDGES DOCKET

Date Filed   10-11-16

| | Cause Number | Type of Case | |
|---|---|---|---|
| **288067** | 288067 - 0   Court **169** | Fraud | |
| | **Style of Case** | - PRO-SE, | |
| | SHAWN A. RICHESON, | | |
| | **VS** | | |
| | ADAM S. KUNZ | | |

| Date of Orders | Orders of Court |
|---|---|
| 10-11-16 | PLAINTIFFS ORIGINAL PETITION BY SHAWN RICHESON PRO-SE |
| 1/3/17 | Order signed Reassigning case to 146th D.C. |
| SCAN 1/3/17 | enter order for sub service |
| 2/10/17 | enter interloc default jdmt on liability only |
| SCAN 2-13-17 | Partial Default Judgment & Copies mailed SS |

7016 2140 0000 1386 6168 DF/SS
#288,067-C
SHAWN A RICHESON
1906 TWILIGHT
KILLEEN TX  76543

7016 2140 0000 1386 6175 DF/SS
#288,067-C
ADAM S KUNZ
1507 EAST FLOWER STREET
PHOENIX AZ  85014

| Date of Orders | Orders of Court |
|---|---|
| 3/3/17 | π filed notice of nonsuit — ct dismisses π's action w/ prejudice & makes no ruling on Δ's mtn for sanctions or frivilous action |

createform bdc_dock1